RYAN ALEXANDER, ESQ.
Nevada Bar No. 10845
RICHARD ENGLEMANN, ESQ.
Nevada Bar No. 6965
RYAN ALEXANDER, CHTD.
3017 West Charleston Blvd., Ste. 10
Las Vegas, NV 89102
Phone: (702) 868-3311
Fax: (702) 822-1133
ryan@ryanalexander.us
richard@ryanalexander.us
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JILL HARRISON, an Individual; | Case No.: 2:24-cv-502 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| THE HERTZ CORPORATION, a Delaware Corporation, DOES I - X, Inclusive, and ROE Corporations I - X, Inclusive, | |
| Defendants. | |

COMES NOW Plaintiff JILL HARRISON ("HARRISON", "Plaintiff"), by and through her attorneys of record, RYAN ALEXANDER, ESQ., and RICHARD ENGLEMANN, ESQ. of RYAN ALEXANDER, CHTD., for her Complaint against THE HERTZ CORPORATION ("HERTZ"), and alleges, based upon personal knowledge and information and belief on knowledge, as follows:

**PARTIES**

1. Plaintiff JILL HARRISON resides in Clark County, Nevada.

2. Defendant THE HERTZ CORPORATION is a Delaware Corporation doing business within the State of Nevada.

3. Upon information and belief, Defendant is a place of public accommodation under federal and Nevada antidiscrimination laws.

4. The true names and capacities, whether individual, corporate, associate or otherwise of other Defendant hereinafter designated as DOES I-X, inclusive, and/or ROE CORPORATIONS I-X,

1

1  inclusive, who are in some manner responsible for injuries described herein, are unknown at this
2  time. Plaintiff, therefore, sues said Defendant by such fictitious names and will seek leave of the
3  Court to amend this Complaint to show their true names and capacities when ascertained.
4  5. Upon information and belief, at all times pertinent, Defendant were agents, servants, employees
5  or joint ventures of every other Defendant herein, and at all times mentioned hereinafter were acting
6  within the scope and course of said agency, employment, or joint venture, with knowledge and
7  permission and consent of all other Defendants.
8  6. The Defendants are jointly and severally liable for each defendant's actions.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiffs' claims arising under state and local law.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants operate their businesses in this District and the acts and omissions giving rise to this Complaint occurred in this District.

## PERTINENT FACTS

9. Plaintiff HARRISON is substantially limited in mobility requiring a mobility device such as a wheelchair or scooter. As such, Plaintiff is a qualified person with a disability within the meaning of federal civil rights statutes.

10. To be proactive, and despite the ADA's explicit rules that Title III public accommodations are not permitted to demand proof of a specific disability, HARRISON travels with notice letters from medical providers - including a university hospital - that her severe, chronic conditions of her back, feet and knees cause difficulty walking, and that under medical advice she requires either a scooter or wheelchair.

11. The United States Department of Justice offers various guidelines for Title III public accommodations, including retail stores, which explain:

a. "**People with mobility, circulatory, respiratory, or neurological disabilities use many kinds of devices for mobility. Some use walkers, canes, crutches, or braces. Some use manual or power wheelchairs or electric scooters.** In addition, advances in technology have given rise to new devices, such as Segways, that some people with disabilities use as mobility devices, including many veterans injured while serving in the military. And more advanced devices will inevitably be invented, providing more mobility options for people with disabilities."

b. "**People with disabilities have the right to choose whatever mobility device best suits their needs.** For example, someone may choose to use a manual wheelchair rather than a power wheelchair because it enables her to maintain her upper body strength. Similarly, someone who is able to stand may choose to use a Segway® rather than a manual wheelchair because of the health benefits gained by standing. A facility may be required to allow a type of device that is generally prohibited when being used by someone without a disability when it is being used by a person who needs it because of a mobility disability."

*https://www.ada.gov/resources/opdmds/*, bold emphasis added.

### The Incident with HERTZ

12. On November 9 and November 16, 2023, HARRISON visited the HERTZ for Uber rentals at Uber Warm Springs at 98 E. Warm Springs Rd., Las Vegas, Nevada, to shop using her scooter.

13. As of November 2023, HARRISON drove for Uber rideshare for employment by renting her vehicle from HERTZ.

14. On both November 9 and November 16, 2023, HERTZ employees mocked and berated HARRISON for using her scooter.

15. HERTZ employees repeatedly told HARRISON that a scooter was not a qualified device.

16. HARRISON tried to explain the ADA permissions for mobility devices.

17. HARRISON was humiliated and demeaned by HERTZ's employees.

3

18. HARRISON repeatedly asked for a manager or supervisor; on November 9, 2023, HARRISON spoke to a supervisor and explained what she could about the ADA mobility permissions and HARRISON's disability status.

19. Again on November 16, 2023, HERTZ employees openly mocked HARRISON in front of employees and other customers and said that HARRISON could not use a scooter indoors, and further implied that HARRISON was lying and faking her disabilities.

20. Emboldened by the other employees' open disparagement of HARRISON, a man believed to be another Uber driver turned and yelled at HARRISON that a scooter was not a "real" mobility device, it was his turn, and "go sit your ass down."

21. This caused further stress as the entire room of people was obviously turned against HARRISON as she tried to explain her rights under the ADA.

22. HARRISON was humiliated and publicly shamed in front of other customers, HARRISON was not allowed to use her mobility device and had to walk to pay for her vehicle.

23. As she waited to complete her transaction, HERTZ employees then falsely accused HARRISON of using profanities in the HERTZ lobby and immediately revoked her rental privileges.

24. HERTZ forced HARRISON to return her rental car.

25. As the HERTZ rental was HARRISON's way to work for Uber, HARRISON instantly lost her employment due to HERTZ' intentional and malicious actions.

26. HERTZ took those actions in retaliation for HARRISON using a mobility device and for trying to stand up for her rights under the ADA *after* HERTZ employees were cruel and demeaning to her, and the HERTZ employees were legally incorrect in their pronouncements.

27. On November 29, 2023, HERTZ customer service wrote to HARRISON:

> "Per our conversation I was going to review further with my management. Our management has confirmed the use of your scooter is permitted on our premises but must be operated in a safe manner.
>
> Based on our review regarding being placed on our Suspended Rental Privileges (SRP) list, your rental privileges have been permanently suspended due to your use of language at our Uber Warm Springs location. This decision cannot be overridden and is considered a final decision."

4

28. HERTZ' claim of 'use of language' was a false accusation made by HERTZ employees in retaliation against HARRISON standing up for herself.

29. Defendants' discrimination against Plaintiff, and Plaintiff's resulting lack of understanding as to her mobility needs, caused Plaintiff to suffer humiliation, anger, frustration, stress, anxiety, and emotional distress, and caused her to lose her rideshare employment and primary source of income.

30. In doing so, Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to her federally protected rights.

31. Defendants' wrongful and intentional discrimination against Plaintiff on the basis of disability is reflected by Defendants' failure to train employees and promulgate policies of non-discrimination against individuals requiring mobility devices.

32. As a result of Defendants' failure to ensure effective communication with Plaintiff, she received services that were objectively substandard and that were inferior to those provided to customers who are mobile.

33. Plaintiff is entitled to equal access to services offered by Defendants as are enjoyed by non-disabled persons.

34. Plaintiff would like to rent from HERTZ in the future given its critical part of her rideshare employment, but is deterred from doing so by the HERTZ' intentional and vicious discrimination against her on the basis of her disability.

**FIRST CLAIM FOR RELIEF**

*Violations of Title III of the Americans with Disabilities Act Against All Defendants*

35. Plaintiff incorporates by reference all preceding paragraphs and realleges them herein.

36. At all times relevant to this action, Title III of the ADA has been in full force and effect and has applied to Defendant's conduct.

37. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility and walking, and therefore is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

38. Defendant owns, leases, and/or operates a place of public accommodation within the meaning of

the ADA, 42 U.S.C. § 12181(7)(E).

39. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

40. Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefit to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A).

41. Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

42. Defendant discriminated against Plaintiff, on the basis of her disability, in violation of Title III of the ADA.

43. Upon information and belief, Defendant's refusal to allow HARRISON's mobility device is the result of a policy or practice of Defendant to prohibit or impede the use of mobility devices without regard to the disabled customer's rights to choose their transportation.

44. Plaintiff is therefore entitled in injunctive relief, as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. §§ 12188(a)(1) & (2).

## SECOND CLAIM FOR RELIEF

*Violation of Nevada's Public Accommodation Law Against All Defendants*

45. Plaintiff incorporates by reference all preceding paragraphs and realleges them herein.

*46.* At all times relevant to this action, Nevada's Public Accommodation Law has been in full force and effect and has applied to Defendant's conduct. N.R.S. § 651 *et seq.*

47. At all times relevant to this action, Plaintiff has had a disability within the meaning of N.R.S. § 651.050.

48. At all times relevant to this action, Defendant has been a public accommodation within the meaning of N.R.S. § 651.050.

6

49. Nevada's Public Accommodation Law provides that "all persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, without discrimination or segregation on the ground of … disability…" N.R.S. § 651.070.

50. Defendant withheld, denied, and deprived Plaintiff of her rights and privileges secured by N.R.S. § 651.070.

51. Upon information and belief, Defendants' refusal to allow Plaintiff's mobility device is the result of a policy or practice of Defendant to prohibit or impede the use of mobility devices without regard to the disabled customer's right to choose their own type of mobility device.

52. Plaintiff is therefore entitled to damages, equitable relief, costs and attorneys' fees pursuant to N.R.S. § 651.090.

***

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff JILL HARRISON respectfully requests that this Court:

    A.    Enter a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the ADA and Nevada's Public Accommodation Law;

    B.    Issue an injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies mobility-impaired individuals meaningful access to, and full and equal enjoyment of, Defendant's facilities, services, or programs;

    C.    Issue an injunction ordering Defendant to:

        i.    develop, implement, promulgate, and comply with a policy requiring that employees are trained on all appropriate mobility devices;

        ii.    develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are mobility impaired of their right to effective transportation; including posting explicit and clearly marked and worded notices that Defendant will permit mobility devices within their premises;

      iii.    develop, implement, promulgate, and comply with a policy to ensure that mobility impaired individuals are able to travel by the most appropriate method under the circumstances;

      iv.    train all employees, staff, and other agents on a regular basis about the rights of individuals who are mobility impaired under the ADA and Nevada's Public Accommodation Law.

D. Award to Plaintiff:

      i.    Compensatory damages;

      ii.    Nominal damages;

      iii.    Reasonable costs and attorneys' fees;

      iv.    Interest on all amounts at the highest rates and earliest dates allowed by law; and

      v.    Any and all other relief that this Court deems just and appropriate.

***

## JURY DEMAND

Plaintiff demands a trial by jury pursuant to the Seventh Amendment of the Constitution of the United States.

Dated March 14, 2024.                      RYAN ALEXANDER, CHTD.

                                                            /s/ Ryan Alexander
                                                            RYAN ALEXANDER
                                                            Nevada Bar No. 10845
                                                            3017 West Charleston Blvd., Ste. 10
                                                            Las Vegas, NV 89102
                                                            *Attorney for Plaintiff*